UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL SR.,

    Plaintiff,

v.                                              Case No. 19-cv-1400-pp

JENNIFER MCDERMOTT, TRACY L. THOMPSON,
LORI DOEHLING, and ANNE M. REILLY,

    Defendants.

## ORDER SCREENING SECOND AMENDED COMPLAINT
### (DKT. NO. 11)

Plaintiff Charles B. Gill Sr., an inmate at Kettle Moraine Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983. Dkt. No. 1. Seven months later, before the court had screened the original complaint, he filed an amended complaint. Dkt. No. 8. The court screened the amended complaint and found that it stated at least two separate, distinct and unrelated claims against different sets of defendants in violation of the Federal Rules of Civil Procedure 18 and 20. Dkt. No. 10 at 14. The court gave the plaintiff an opportunity to file a second amended complaint by November 27, 2020, instructing the plaintiff to choose which claim and which set of defendants he wants to pursue in this case. Id. at 15. The court received the second amended complaint on November 2, 2020. Dkt. No. 11.

1

## I. Screening the Second Amended Complaint

### A. Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    Allegations in the Second Amended Complaint

The plaintiff alleges that he has suffered from chronic migraines since he was six years old. Dkt. No. 11 at 3. He states that in August 2018 when he arrived at Dodge Correctional Institution (the Wisconsin Department of Corrections' intake facility), he saw a doctor who prescribed him acetaminophen for his migraines. Id. When he arrived at Kettle Moraine Correctional Facility, he was still taking acetaminophen. Id. The plaintiff states that he was given two bottles a month, which came out to forty-eight pills. Id.

The plaintiff says that on July 3, 2019, he started having a severe migraine. Id. He took the acetaminophen as directed. Id. He ran out on July 4, 2019 and put in an order for a new bottle. Id. at 3-4. The plaintiff alleges that on July 5—the next day—he received the order back, denying his request and indicating, "Limit one bottle every two months. 1 bottle issued on 5-8-19 and 1

3

bottle issued on 6-10-19." Id. at 4. The plaintiff reminds the court that one bottle held only twenty-four pills, that the directions called for him to take two tablets by mouth every day as needed for headaches and that "from Dodge till July 5, 2019," he had been getting *two* bottles a month, or forty-eight pills. Id. The plaintiff states that he "suffered a migraine so bad that [he] could not read, write, sleep, eat or shower. [He] could hardly focus." Id. He further alleges that he "had blurry vision, [his] eyes were sensitive to lights, and [his] head hurt even more with noise. [He] was dizzy and throwing up." Id.

The plaintiff says that same day—July 5—he spoke with Sgt. Bowers and Officer Lamb (not defendants), and Sgt. Bowers emailed Mr. Hocevar, the acting manager of the Health Services Unit. Id. The plaintiff "also wrote Mr. Hocevar on a DOC 761 slip and put in a medication refill slip that said 'Need Medication ASAP. Have had Migraine since 7-3-19.'" Id. at 4-5. The plaintiff wrote the DOC 761 slip to Hocevar on July 6; On July 7, Nurse N. Schwaller (not a defendant) called the plaintiff to the Health Services Unit (HSU), evaluated him and obtained permission from the on-call doctor to administer a shot of Toradol. Id. at 5. The plaintiff says his migraine went away the next day, July 8.

The plaintiff says that on that same day—July 8—defendant Lori Doehling, Nurse Coordinator, responded to the DOC 761 slip the plaintiff had sent to Hocevar, stating: "Mr. Gill we are moving up for ACP[1] appointment due to the need to review meds." Id.

---

[1] Advanced care provider.

The plaintiff says that on July 9, he used a third DOC 761 slip to write to Hocevar. Id. The plaintiff alleges that on July 15, 2019, Hocevar finally responded, saying that "Nurse Zuelger told me that NP Thompson responded back to you regarding your reported migraines." Id. The plaintiff acknowledges that this was true, but he says that "what I needed to talk to Mr. Hocevar about, had nothing to do with what I had request [*sic*] and did nothing to stop the pain I was in." Id. at 5-6. The plaintiff says that same day, he "again" wrote to Warden Jennifer McDermott; he says on July 16 she responded, "You filed an Inmate Complaint KMCI-2019-12400 regarding this issue. Please allow the ICRS to finalize the complaint. No action will be taken in regard to this issue by my office." Id. at 6. The plaintiff alleges that McDermott "did nothing to stop the denial or delay of [his] medication or to have HSU look into why [he] had no migraine medication nor why Reilly refused to give [him] medication or stop [his] pain." Id.

The plaintiff also says that he spoke with Doehling on July 16. Id. While the plaintiff was sitting in Doehling's office with her, the plaintiff told her that he was having a migraine, but she did nothing to get him medication. Id. The plaintiff alleges that all Doehling did was tell him that she "would move [his] appointment up as soon as possible, and then sent [him] back to [his] unit still in pain and no medication given." Id. According to the plaintiff, the only thing Doehling did was take his vitals. Id.

The plaintiff sues each defendant in his or her individual and official

5

capacities. Id. at 2. He seeks injunctive relief directing the defendants to allow him to have two bottles of acetaminophen per month. Id. He also seeks punitive damages in the amount of $500,000 and compensatory damages in the amount of $800,000. Id.

    C.    Analysis

The plaintiff claims the defendants violated his Eighth Amendment rights when they were deliberately indifferent to his migraine and related symptoms and when they refused him pain medication. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Such conditions include "grossly inadequate medical care." Id. To successfully state a claim for deliberate indifference to medical needs under the Eighth Amendment, the plaintiff must allege two things: (1) "that he suffers from an objectively serious medical condition," and (2) that defendants "knew about his condition and the risk it posed but disregarded that risk." Id. at 409.

A condition is objectively serious where "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." Id. The condition "need not be life-threatening to be serious; rather it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). Where the plaintiff is relying on a

6

delay in treatment to demonstrate an objectively serious medical condition, "generally he must show that the claimed delay had a detrimental effect on or worsened his condition." Leaks v. Fowler, No. 13-C-1261, 2016 WL 878204 at *6 (N.D. Ill. Mar. 8, 2016) (citing Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009)). Not every ache, pain or discomfort rises to the level of a constitutional violation. Franklin v. McCaughtry, 110 F. Appx. 715, 721 (7th Cir. 2004) (citing Guiterrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997)).

The plaintiff alleges that he suffered from severe migraines that significantly impeded his ability to engage in day-to-day functions such as sleeping, eating and showering. Dkt. No. 11 at 4. He says his pain was so bad he was dizzy and throwing up. Id. The court finds that the plaintiff has alleged sufficient facts to show that he suffered from an objectively serious medical condition.

To state a claim for deliberate indifference to such a serious medical condition, a plaintiff must allege "that an official actually knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiff "must show more than mere evidence of malpractice." Id. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." Stallings v. Liping Zhang, 607 F. Appx. 591, 593 (7th Cir. 2015)

7

(quoting Pyles, 771 F.3d at 409). Such circumstances include a prison official who fails to act or do anything to address the serious medical need. See Gayton, 593 F.3d at 623-624 (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). They also include an official who delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. Gomez v. Randle, 680 F.3d 859, 865-66 (7th Cir. 2012).

The plaintiff names four defendants—Lori Doehling, nurse coordinator at Kettle Moraine; Nurse Practitioner Tracy L. Thompson; Registered Nurse Anne M. Reilly; and Warden Jennifer McDermott. Dkt. No. 11 at 2. In his first amended complaint (which the court screened), the plaintiff included detailed allegations against Thompson and Reilly that he did not include in this second amended complaint. See Dkt. No. 8 at 2. Specifically, he alleged in his first amended complaint that in response to a message he wrote on July 12, 2019, Thompson denied him a second bottle of acetaminophen, and that on July 14, 2019, Reilly denied his medication request. Id. In this second amended complaint, the mentions Thompson and Reilly only once. The only allegation against Thompson appears in is his allegation regarding Hocevar's response to his DOC 761 slip, in which Hocevar stated that Thompson already had responded to the plaintiff's complaint about his migraines. Dkt. No. 11 at 5. The plaintiff mentions Reilly only in the context of alleging that McDermott did not address the fact that Reilly refused to give

8

the plaintiff medication. Id. at 6.

As the court noted in its order screening the original complaint, "an amended complaint supersedes [takes the place of] an original complaint and renders the original complaint void." Flanner v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n. (7th Cir. 2004) (citations omitted); Dkt. No. 10 at 3. The plaintiff did not repeat the allegations against Thompson and Reilly in this second amended complaint, and the allegations he did include do not state a claim against them upon which the court can grant relief. He does not say how Thompson and Reilly failed to treat his migraines and what they did (or did not do) to deny him pain medication. The court will dismiss them as defendants.

The court also noted in its order screening the original complaint that the plaintiff should keep in mind that "[p]ublic officials do not have a free-floating obligation to put things to rights . . . ." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009); Dkt. No. 10 at 17. "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care." Id. (citing Durmer v. O'Carroll, 991 F.3d 64 (3rd. Cir. 1993); Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir. 2006). The plaintiff claims that Warden McDermott ignored his complaints of pain and his requests for medicine and did not correct her subordinates' behavior. Dkt. No. 11 at 6. But the plaintiff's own allegations demonstrate that McDermott did not

9

ignore him or his requests; she deferred to the Inmate Complaint System, noting that the plaintiff already had filed a complaint which was still pending and asking the plaintiff to let that complaint work its way through the Inmate Complaint Review System. Id. The warden was entitled to defer to the grievance process set up to address inmate complaints and had no duty to directly intervene outside of that process. The plaintiff has not stated a claim against McDermott for which the court can grant relief, and the court will dismiss her as a defendnat.

The court will allow the plaintiff to proceed on an Eighth Amendment deliberate indifference to medical needs claim against defendant Lori Doehling. He alleges that Doehling was aware of the plaintiff's migraine issues starting on July 8, 2019, when she responded to the DOC 761 slip the plaintiff wrote to Hocevar. Dkt. No. 11 at 5. At that time, she informed the plaintiff that she was moving up his appointment with the advanced care provider but did nothing to address his pain. Id. Several days later, on July 16, she saw the plaintiff in her office, where he again complained of pain, and again, she did nothing other than check his vitals and reiterate that his appointment was being moved up. Id. at 6. The plaintiff's allegations that Doehling's actions (or inaction) caused a delay in treatment of his pain that aggravated his condition are sufficient to state an Eighth Amendment claim.

The plaintiff has sued Doehling in both her individual and official capacity. A suit against a state official in his or her official capacity is a suit

10

against the official's office. It is no different than a suit against the state itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The plaintiff's official capacity claim against Doehling is a claim against the state. Where a plaintiff seeks damages rather than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. Where a plaintiff seeks injunctive relief, such claims are permissible under §1983. To state such claim, the plaintiff must allege that the entity's policy, practice or custom resulted in the constitutional violation. Hafer v. Melo, 502 U.S. 21, 25 (1991). The plaintiff seeks injunctive relief requiring Doehling to allow him two bottles of acetaminophen a month. Dkt. No. 11 at 7. He also alleges that Kettle Moraine has a policy that allows only one bottle per month. Id. at 4. The court will allow him to proceed on a claim against Doehling in her official capacity.

## II. Conclusion

The court **DISMISSES** defendants Jennifer McDermott, Tracy L. Thompson and Anne M. Reilly from the case.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the second amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendant Lori Doehling. The court **ORDERS** defendant Doehling to file a responsive pleading to the second amended complaint within sixty days.

11

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 17th day of December, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER
Chief United States District Judge**